Charles Richard SMITH, Plaintiff,

v.

Governor James THOMPSON, et al., Defendants.

No. 88 C 4053.

United States District Court, N.D. Illinois, E.D.

May 20, 1988.

Charles Richard Smith, pro se.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Charles Richard Smith ("Smith") seeks leave to file an in forma pauperis Complaint against Governor James Thompson, Illinois Department of Corrections ("DOC") Director Michael Lane, Assistant DOC Director Daniel Bosse and two DOC employees previously employed or now employed at Dixon Correctional Center ("Dixon"), asserting claims Smith believes actionable under 42 U.S.C. § 1983 ("Section 1983"). For the reasons stated in this memorandum opinion and order, leave to file in forma pauperis is granted in part but this action is transferred to the Western Division of this Northern District of Illinois, where Dixon is located and Smith's claim arose.

Efforts to file suit in forma pauperis must, of course, be accompanied by a showing of inability to pay the filing fee. Though Smith certainly meets that standard, that is not enough: In addition, his Complaint must survive the threshold test of non-"frivolousness" in the legal sense defined by such cases as *Wartman v. Milwaukee County Court*, 510 F.2d 130, 134 (7th Cir.1975) and *Jones v. Morris*, 777 F.2d 1277, 1279 (7th Cir.1985) and most recently refined in *Williams v. Faulkner*, 837 F.2d 304, 306-07 (7th Cir.1988) and *Smith–Bey v. Hospital Administrator*, 841 F.2d 751, 757-58 (7th Cir.1988). That second step is where Smith fails as to Governor Thompson and Director Lane, though he arguably succeeds against the other defendants.

*Williams*, 837 F.2d at 307 says this Court may dismiss the Complaint "only if [Smith] cannot make any rational argument in law or fact which would entitle him ... to relief." As *Smith–Bey*, 841 F.2d at 757 puts it:

> Under § 1915(d), a district court's job is much easier. It only need determine that the complaint states an "arguable" basis for relief.

That notion accurately reflects (and is to be read in conjunction with) the broadly liberal reading to be given pro se litigants' pleadings under *Haines v. Kerner*, 404 U.S. 519,

520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

Though much of Smith's claim must be pieced out of the voluminous exhibits to his self-drafted Complaint rather than from the pleading itself, his claim of harassment at the hands of Dixon officials [1] appears to include at least one potential constitutional violation: the deprivation of visiting privileges for his son (Complaint Ex. B at 4, part of the September 29, 1986 psychiatric evaluation of Smith by Dr. Werner Tuteur).[2] But the only hook on which Smith seeks to hang the joinder of Governor Thompson and Director Lane is this portion of his Statement of Claim (copied verbatim):

> But, Daniel Bosse, Warden Linda Giesen, Captain Floyd Gardner never did truly try to help me in my problem and the pressures just continued to build-up and I think that the Governor of the State of Illinois and the Director of the Illinois Department of Correctional Services are just responsible for the pressures that I was suffering with and as result of these pressures that I was suffering with I could not maintain my mental control (PLAINTIFFS EXHIBIT B AND C) and that therefor that the Governor of the State of Illinois and the Director of the Illinois Department of Corrections and the Warden of the Dixon Correctional Center and Assistant Director Daniel Bosse (PLAINTIFFS EXHIBIT #D) and Captain Floyd Gardner of the Dixon Correctional Center are all responsible for conspiring to bring pressures on the plaintiff and that because of that the plaintiffs brother's was involved in the Warden of the Pontiac Correctional Cen-

ter being murder in June of 1985 and that because of this event that the plaintiff believes that the defendants plotted and have accussed the plaintiff indirectly and sublimely that the plaintiff is in some way connected with the Warden Willis murder because of the fact that the plaintiffs brother was convicted for that offense and is presently on the death-row in the Menard Correctional Center.

Even with the already-described favorable standards applicable to such pro se pleadings, Smith's subjective thought (which, on Smith's own statement, is wholly unrelated to any information or to any rational inference that would support it) cannot suffice to draw the Governor and Director Lane into the net as defendants (see *Crowder v. Lash*, 687 F.2d 996, 1005–06 (7th Cir.1982); *Stringer v. Thompson*, 537 F.Supp. 133, 138–39 (N.D.Ill.1982)). Thus the Complaint must be viewed as "frivolous" as to those defendants even under the *Williams–Smith–Bey* standards.

Because none of the defendants remaining in the case resides in this Eastern Division, venue belongs in the Western Division of this District and not here (see 28 U.S.C. § 1393(b)). That means the action must be transferred to that Division under 28 U.S. C. § 1406(a).[3] Accordingly:

1. Leave to file in forma pauperis is granted, but Governor Thompson and Director Lane are dismissed as defendants as a condition of such filing.

2. This action is transferred to the Western Division of this District, effective immediately (see this District Court's General Rule 30(a)).

In light of the low threshold established by *Williams, Smith–Bey* and like cases, the appropriate course of action would appear to be to grant leave to file the Complaint, then appoint counsel for Smith and let the appointed counsel put together an amended complaint in light of what Section 1983 requires.

---

1. According to Smith, the alleged campaign of harassment was somehow in retaliation for the fact that Smith's *brother* was charged with and later convicted of the June 30, 1985 murder in Chicago of the Assistant Warden of Pontiac Correctional Center. If that is so (and it must be accepted for current purposes), it certainly supports the total arbitrariness of the alleged conduct—Smith had been in custody for a murder of his own for some 14 years when the later killing occurred.

2. This is not of course a definitive ruling on the subject, nor does this Court purport to rule on the other things Smith claims as harassment.

3. That section calls for dismissal of the incorrectly-filed action unless transfer is "in the interest of justice." Certainly justice would not be served by requiring Smith to file his papers all over again in the Western Division.

That court can determine the appropriate course of action as to appointment of pro bono counsel for Smith, the service of process on the remaining defendants and all other aspects of the case.